Michael J. McDONOUGH and Herschel
Tate, Plaintiffs,

v.

GENCORP, INC., a corporation, d/b/a
The General Tire & Rubber Company,
J.R. Preston, Greg Brown, and Bill
Henderson, Defendants.

Civ. No. 90–4011.

United States District Court,
S.D. Illinois.

Nov. 1, 1990.

Theodore R. Diaz, Lakin & Herndon,
Wood River, Ill., for plaintiffs.

Daniel R. Begian, McMahon, Berger,
Hanna, Linihan, Cody & McCarthy, St.
Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court is the defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 19). The defendants argue for dismissal on the grounds that (1) the plaintiffs' claims are pre-empted by the National Labor Relations Act; (2) the plaintiffs have failed to satisfy the pleading requirements under the Racketeer Influenced and Corrupt Organizations Act (RICO); (3) none of the predicate acts necessary to establish a pattern of racketeering under RICO have been pled with the specificity required by Federal Rule of Civil Procedure 9(b); and (4) the RICO statute is unconstitutionally vague, both on its face and as applied to the defendant.

### I. Facts

The plaintiffs, Michael J. McDonough and Herschel Tate, filed this RICO complaint on January 31, 1990. The complaint states that the plaintiffs attempted to organize the hourly employees of defendant Gencorp, Inc., during the period from August 1986 through the end of 1987. In response to the plaintiffs' activities, the defendant, by and through certain management personnel and hourly employees, allegedly formed an enterprise known as the "White Hat Committee" to establish a pattern of anti-union activity in the defendant's plant. The complaint states that this committee attempted to deceive or defraud the plaintiffs and hourly employees and deprive the plaintiffs of the right to democratic participation in the decision to unionize Gencorp.

Specifically, the complaint states that (1) the committee used the United States mails and placed telephone calls in which committee members misrepresented facts concerning the Union, its organizers and the company's ability to maintain a newly implemented bonus program; (2) committee members placed telephone calls to plaintiff McDonough, threatening him with bodily harm if he continued his unionizing efforts; and (3) committee members attempted to coerce plaintiffs McDonough and Tate to give up their union activities by threatening to commit a crime of violence upon them; and (4) committee members threatened another employee, Gerald May, with bodily harm if he did not give up his union activities.

The defendants filed a motion to dismiss the complaint on March 29, 1990, raising some of the same issues presented in the pending motion. The plaintiffs failed to respond to the March 29 motion, and the Court issued an order to show cause why the motion should not be granted. In response to the Court's order, the plaintiffs filed a motion for leave to file an amended complaint, which was granted. The defendants then filed the pending Motion to Dismiss.

### II. Analysis

For purposes of defendant's Motion, all well-pleaded allegations of the complaint must be taken as true. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). The test to be applied on a motion to dismiss is whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985).

### A. Pre–Emption by the National Labor Relations Act

The defendants argue that the plaintiff's RICO claim is pre-empted by the National Labor Relations Act (NLRA) because the predicate acts listed in the complaint fall within the exclusive jurisdiction of the National Labor Relations Board (NLRB).

The courts have long recognized that Congress gave the NLRB exclusive jurisdiction over unfair labor practices. Thus, the Supreme Court has stated that the NLRA "pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29

L.Ed.2d 473 (1971) (explaining the labor law pre-emption doctrine established in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See also Veal v. Kerr–McGee Coal Corp.,* 682 F.Supp. 957, 959 (S.D.Ill.1988), *aff'd,* 885 F.2d 873 (7th Cir. 1989) ("when an activity is either expressly or arguably protected by § 7 or prohibited by § 8 [of the NLRA], a claim arising out of that activity is preempted by the Act.")

However, Congress can create statutory exceptions to the NLRB's exclusive jurisdiction. *Butchers' Union, Local No. 498 v. SDC Inv., Inc.,* 631 F.Supp. 1001, 1006–07 (E.D.Cal.1986). Therefore, the question becomes whether Congress has created an exception for RICO claims that are based upon unfair labor practices. Although some confusion exists in this area of the law, the Court is persuaded by several well-reasoned district court opinions which have held that RICO claims such as those presented in the case at bar are not exempt from the NLRA's pre-emption power. *See, e.g., Butchers' Union,* 631 F.Supp. at 1009–11; *Brown v. Keystone Consol. Indus., Inc.,* 680 F.Supp. 1212, 1224–26 (N.D.Ill. 1988).

As pointed out in *Butchers' Union,* some violations of federal labor law are expressly listed as predicate acts under the RICO statutes and, as such, RICO claims based on those labor laws are exempt from NLRA pre-emption. *Id.* at 1007. Specifically, the court found that violations of section 186 of the Act may be used to support a RICO claim because section 186 is expressly listed among the acts which constitute "racketeering activity" under section 1961 of RICO. *Id.*

However, the court reached a different result with respect to RICO claims alleging mail or wire fraud based upon unfair labor practices. The court acknowledged that violations of the mail and wire fraud statutes are predicate acts under RICO. But the mail and wire fraud statutes merely prohibit the use of the mails or wire to perpetrate a fraud; to determine whether a fraud has occurred, the courts must look to other laws. *Id.* at 1010–11. In *Butchers'*

*Union,* as in the case at bar, the fraud was based upon unfair labor practices. Thus, *"but for* the proscriptions of labor law, defendants' conduct simply would not be either mail or wire fraud." *Id.* at 1011. In other words, "[t]he only reason the defendants had committed predicate acts [under the mail and wire fraud statutes] was that they used the mails and wires in furtherance of fraud as defined by federal labor law." *Brown,* 680 F.Supp. at 1225 (explaining the *Butchers' Union* holding).

Other courts and commentators appear to be in accord with this viewpoint. Although they suggest that the NLRA does not bar every RICO claim that could fall under the labor statute, they agree that certain claims are pre-empted by the NLRA. *See MHC, Inc. v. International Union, United Mine Workers of America,* 685 F.Supp. 1370, 1374–80 (E.D.Ky.1988) (RICO action may proceed only if the predicate acts are offenses independent of labor law).

That RICO and NLRB remedies might overlap is not enough to bar the RICO remedy ... Congress clearly intended the availability of multiple remedies for some offenses. For example, when conduct violating section 7 of the NLRA also violates any of the three labor crimes that are expressly identified as RICO predicate acts, the legislative intent to allow the RICO remedies is clear. Similarly, where the substantive rights interfered with by RICO predicate acts have their roots in both section 7 and the Landrum–Griffith Act, Congress already has demonstrated its intent to abandon NLRB exclusivity. Moreover, since the courts have long held that the NLRA does not preempt state criminal statutes of general applicability and since many crimes defined by state law qualify as RICO predicates, it is also arguable that Congress did not intend the NLRA to limit RICO remedies for violations based on those predicate acts.

On the other hand, the NLRA probably preempts RICO remedies in cases where employers or unions commit predicate offenses, such as mail fraud or wire fraud (which are not labor crimes per se) in

order to violate employee rights that derive only from the NLRA....

Goldberg, *Cleaning Labor's House: Institutional Reform Litigation in the Labor Movement,* 1989 Duke L.J. 903, 956–57 (footnotes omitted). *See also* Note, *The Exclusive Jurisdiction of the NLRB as a Limitation on the Application of RICO to Labor Disputes,* 76 Ky.L.J. 201 (1987–88 (because Congress included 29 U.S.C. § 186 as a RICO predicate act, "the inclusion of other more generic federal crimes as RICO predicate acts was probably not intended to bring other unfair labor practices outside the exclusive jurisdiction of the NLRB.").

■ Under this analysis, it is clear that the RICO claim presented in the case at bar is pre-empted by the NLRA because each of the predicate acts alleged in the complaint is based solely upon labor law violations. As the defendants point out, the conduct alleged in the complaint is all part of one scheme to deprive the plaintiffs of democratic participation in the selection of a union. This claim is actionable only by virtue of sections 7 and 8 of the NLRA.[1] The RICO claim is therefore pre-empted by the NLRA.

## B. *RICO Pattern Requirement*

■ The defendants also argue that the complaint fails to establish a "pattern of racketeering" under RICO. The Supreme Court recently addressed the pattern requirement, holding that a pattern of racketeering is established when there is proof that (1) the predicate acts are related; and (2) the acts "amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original).

■ To demonstrate continuity over a closed period of time, as is the situation in the case at bar, the party must prove "a series of related predicates extending over a *substantial* period of time. Predicate

acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.,* 109 S.Ct. at 2902. The Seventh Circuit has identified four factors to be considered in making the continuity determination: (1) the number and variety of the predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583 (7th Cir.1989).

■ In this case, the predicate acts alleged in the complaint took place over a period of about eighteen months. However, the acts are all related to one scheme—the plaintiffs' attempts to form a union at defendant Gencorp's plant during 1986 and 1987. Thus, only one distinct injury is alleged: interference with the plaintiffs' right to democratic participation in the selection of a union.

The Court also notes that the alleged predicate acts are primarily based upon mail and wire fraud. The Seventh Circuit has consistently held that multiple acts of mail and wire fraud in furtherance of a single episode or scheme are insufficient to establish a pattern of racketeering. *Triad Assocs.,* 892 F.2d at 595; *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1278–79 (7th Cir. 1989); *Lipin Enter. Inc. v. Lee,* 803 F.2d 322, 325 (7th Cir.1986).

Moreover, there is no evidence suggesting that this conduct will recur in the future. Thus, the Court finds that the continuity requirement is not met. *See also Homes by Michelle, Inc. v. Federal Savings Bank,* 733 F.Supp. 1495, 1502 (N.D. Ga.1990) (no continuity where the alleged activity involved a single scheme over two years and no activity projected into the future).

---

1. Section 7 grants employees the "right to self-organization" and to "bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 8 prohibits efforts to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by the NLRA. *Id.* § 158(a)(1).

C. *Specificity of Pleadings and Constitutionality*

Because the Court finds that the plaintiffs' complaint must be dismissed on the grounds of pre-emption and failure to state a cause of action, it is unnecessary to reach the other issues raised in the defendants' motion.

### III. Summary

Based upon the foregoing analysis, the Court GRANTS the defendants' Motion to Dismiss (Document No. 19).

IT IS SO ORDERED.