USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1295 VINCENT R. TAMBURELLO, Plaintiff - Appellant, v. COMM-TRACT CORPORATION, JOHN F. POLMONARI, EDWARD MENARD, AND STEVEN DICKIE, Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Lynch, Circuit Judge, _____________ and Casellas,* District Judge. ______________ _____________________ Matthew Cobb, with whom Law Office of Matthew Cobb, was on ____________ __________________________ brief for appellant. Timothy P. Van Dyck, with whom Joshua L. Ditelberg and _____________________ ____________________ Edwards & Angell, were on brief for appellees. ________________ ____________________ October 2, 1995 ____________________  ____________________ * Of the District of Puerto Rico, sitting by designation. TORRUELLA, Chief Judge. Vincent Tamburello TORRUELLA, Chief Judge. _____________ (Tamburello) appeals the dismissal of his complaint against his employer, Comm-Tract Corporation (Comm-Tract), and several individuals who were his supervisors at Comm-Tract. Tamburello alleges that his supervisors engaged in a course of harassment in retaliation for his union activities as a union steward, and seeks damages under, inter alia, the Racketeering Influenced and _____ ____ Corrupt Organizations Act (RICO), 18 U.S.C. 1962(c) (1988), and the Massachusetts Civil Rights Act (MCRA), Mass. Gen. L. ch. 12, 11I (1988). The district court found that Tamburello's claims are preempted by the National Labor Relations Act, as amended, 29 U.S.C. 151-161 (1988) (NLRA), and therefore dismissed his complaint for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). We affirm. BACKGROUND BACKGROUND We review the dismissal de novo, considering only those __ ____ facts alleged in the complaint, and drawing all reasonable inferences therefrom. Lesser v. Little, 857 F.2d 866, 867 (1st ______ ______ Cir. 1988). We will affirm the dismissal "only if it appears beyond doubt that [Tamburello] can prove no set of facts which would entitle him to relief." Id. (citing Conley v. Gibson, 355 __ ______ ______ U.S. 41, 45-46 (1957)). In July 1991, Tamburello became a union steward at Comm-Tract. He alleges that soon afterwards the individual defendants -- the president, general manager, and manager of Comm-Tract -- began harassing, threatening and intimidating him. -2- Specifically, Tamburello alleges that they pulled him off favorable jobs, replacing him with less skilled workers; gave him menial job assignments; withheld his personnel file from him; took him off jobs to deny him overtime pay; made him take a forced vacation or face termination; took away his company vehicle; and made threatening anti-union statements. Tamburello alleges that these actions "were solely to harass, embarrass, coerce, and intimidate [him] into giving up his Steward position with the Union." As a result of this intimidation, Tamburello resigned his position with Comm-Tract in May 1993, and subsequently instituted this action. DISCUSSION DISCUSSION Count I of Tamburello's complaint alleges that the individual defendants conducted the affairs of an enterprise, Comm-Tract, through a pattern of Hobbs Act extortion of Tamburello's property rights, in violation of RICO, 18 U.S.C.  1962(c). Count II alleges that the individual defendants conspired to violate RICO by knowingly joining the enterprise and by committing, or agreeing to commit at least two acts of racketeering. Count IV alleges that all defendants violated Tamburello's rights under the MCRA.1 We address the RICO claims first. I. The RICO Claims I. The RICO Claims _______________  ____________________ 1 Tamburello does not appeal the district court's dismissal of Counts III and V. -3- Tamburello alleges that the actions of his supervisors at Comm-Tract constituted a pattern of extortion to deprive him of his rights to speak out on union matters, his rights under the collective-bargaining agreement, and his right to his job. The district court held that Tamburello's RICO claims are preempted by the NLRA, which "pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Amalgamated Ass'n of Street, Elec. Ry. & ________________________________________ Motor Coach Employees v. Lockridge, 403 U.S. 274, 276 (1971) ______________________ _________ (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, _______________________________ ______ 244 (1959)). The NLRA "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." Nash v. Florida Indus. Comm'n, 389 U.S. 235, ____ _____________________ 238 (1967). The NLRA reflects congressional intent to create a uniform, nationwide body of labor law interpreted by a centralized expert agency -- the National Labor Relations Board (NLRB). Accordingly, the NLRA vests the NLRB with primary jurisdiction over unfair labor practices. See 29 U.S.C. 158. ___ Applying these principles, the Garmon Court held that "[w]hen an ______ activity is arguably subject to 7 or 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Garmon, 359 U.S. at 245. The Court has interpreted this to mean ______ that, "as a general rule, neither state nor federal courts have ____ -4- jurisdiction over suits directly involving 'activity [which] is ____________ arguably subject to 7 or 8 of the Act.'" Vaca v. Sipes, 386 ____ _____ U.S. 171, (1967) (emphasis added; and quoting Garmon, 359 U.S. at ______ 245). See also Morgan v. Massachusetts General Hosp., 901 F.2d ________ ______ ___________________________ 186, 194 (1st Cir. 1990) ("as a general rule, the [NLRB] has 'exclusive jurisdiction to find, prevent, and rectify unfair labor practices'") (quoting New Mexico Dist. Council of _________________________________ Carpenters, AFL-CIO v. Mayhew Co., 664 F.2d 215 (10th Cir. 1981); ___________________ __________ and collecting cases)). A primary justification of the preemption doctrine is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose . . . ." Vaca, 386 ____ U.S. at 180-81.2 The alleged wrongful conduct in this case is arguably prohibited by the NLRA. Section 8(a)(3) of the NLRA makes it  ____________________ 2 Although the Garmon doctrine, which is rooted in the Supremacy ______ Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, was originally concerned only with federal supremacy over conflicting state laws, it has been extended to cover the _____ relationship between the NLRA and other federal statutes. See ___ Connell Co. v. Plumbers & Steamfitters, 421 U.S. 616, 626 (1974); __________ _______________________ Morgan, 901 F.2d at 194; New Bedford Fishermen's Welf. Fund v. ______ ___________________________________ Baltic Ent., 813 F.2d 503, 504-05 (1st Cir. 1987). But see ___________ ________ United States v. Boffa, 688 F.2d 919, 931-33 (3d Cir. 1982) ______________ _____ (concluding that Garmon does not apply to conflicts between the ______ NLRA and federal statutes), cert. denied, 460 U.S. 1022 (1983). _____ ______ Because the NLRA's relationship with a state statute implicates the Supremacy Clause, and its relationship with a federal statute does not, some courts hold that the analysis in the former situation should be stricter than in the latter. See Britt v. ___ _____ Grocers Supply Co., Inc., 978 F.2d 1441, 1446-47 (5th Cir. 1992); ________________________ Boffa, 688 F.2d at 931-33. The facts of this case are such that _____ we need not at this time decide whether, or to what extent, we agree with this proposition. -5- unlawful for an employer "by discrimination in regard to hire or tenure of employment to encourage or discourage membership in any labor organization." 29 U.S.C. 158(a)(3). The ultimate question presented by Tamburello's claims is whether his supervisors at Comm-Tract intimidated, coerced, threatened, and harassed him into quitting his job in retaliation for his union activities as a union steward. It is beyond dispute that these allegations, if found to be true, would constitute a violation of the NLRA. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 894 (1983) ___ ______________ ____ (an employer violates 8(a) (3) "when, for the purposes of discouraging union activity, . . . it purposefully creates working conditions so intolerable that the employee has no option but to resign").3 Unless an exception applies, therefore, Tamburello's RICO claims are subject to the NLRB's primary jurisdiction. There are three generally recognized exceptions to the NLRB's primary jurisdiction. The first is where Congress has expressly carved out an exception to the NLRB's primary jurisdiction. Vaca, 386 U.S. at 179-80 (citing cases); Brennan ____ _______ v. Chestnut, 973 F.2d 644, 646 (8th Cir. 1992). Congress has not ________  ____________________ 3 Tamburello's claims are also arguably subject to 8(a)(1) of the NLRA, which makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [ 7 of the NLRA]." 29 U.S.C. 158 (a)(1). Section 7 provides, in pertinent part, that employees shall have the right to "self-organization, to form, to join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. 157. -6- made an exception to the NLRB's primary jurisdiction for claims alleging extortion. Indeed, the only labor-related "racketeering" activity expressly listed as predicates to liability under RICO are actions concerning restrictions of payments and loans to labor organizations, or those relating to embezzlement from labor funds. See 18 U.S.C. 1961(1)(C); 29 ___ U.S.C. 186, 501(c). The specific exceptions carved out in  186 and 501(c) support the conclusion that Congress intended that "violations of labor laws other than 186 [or 501(c)] alleged as predicate acts are preempted." Brennan, 973 F.2d at 647 _______ (citing Butchers' Union, Local No. 498 v. SDC Inv., Inc., 631 F. ______________________________ ______________ Supp. 1001 (E.D.Cal. 1986)). This exception therefore does not apply. The second exception applies when the regulated activity touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction," courts "could not infer that Congress had deprived the States of the power to act." Sears, Roebuck & Co. v. ______________________ Carpenters, 436 U.S. 180, 195 (1977) (quoting Garmon 359 U.S. at __________ ______ 244). This exception is inapplicable to plaintiff's RICO claims because they involve the relationship between two federal laws, as opposed to a state and a federal law. The third exception holds that the NLRB's exclusive jurisdiction does not apply if the regulated activity is merely a peripheral or collateral concern of the labor laws. Vaca, 386 ____ U.S. at 179-80; Brennan, 973 F.2d at 646. Under this exception, _______ -7- federal courts may decide labor questions that emerge as collateral issues in suits brought under statutes providing for independent federal remedies. Connell Construction, 421 U.S. at ____________________ 626; Britt v. Grocers Supply Co., Inc., 978 F.2d 1441, 1446 (5th _____ ________________________ Cir. 1992). Plaintiff's allegations arguably establish violations of both RICO and the NLRA -- extortion on the one hand, and unfair labor practices on the other. We must determine whether the issues raised by Tamburello's potential unfair labor practice claims are merely collateral to the issues raised by his RICO extortion claims. In making this determination, several federal courts take the position that courts must defer to the primary jurisdiction of the NLRB if the underlying conduct of the RICO claim is wrongful only by virtue of, or reference to, the labor laws. See Brennan, 973 F.2d at 646; Talbot, 961 F.2d at 662; ___ _______ ______ Mann v. Air Line Pilots Assoc., 848 F. Supp. 990, 993 (S.D.Fla. ____ _______________________ 1994); McDonough v. Gencorp, Inc., 750 F. Supp. 368, 370 _________ ______________ (S.D.Ill. 1990). One federal court has framed the issue as follows: RICO should be read as limited by the exclusive jurisdiction of the NLRA only when the Court would be forced to determine whether some portion of the defendant's conduct violated labor law before a RICO predicate act would be established. So long as the predicate act exists independent of any unfair labor practice resolutions, the NLRB's exclusive jurisdiction is not violated since the Court will not be forced to interpret labor law except as a collateral matter. However, if the existence of the predicate acts depends -8- wholly upon a determination that a violation of federal labor law occurred, jurisdiction is preempted. MHC v. Intern. Union, United Mine Wkrs. of Am., 685 F. Supp. ___ __________________________________________ 1370, 1376-77 (E.D.Ky. 1988). Similarly, we have held, in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C.  2000e et seq., that the NLRA is the exclusive remedy for claims "which hinge on an unfair labor practice having occurred." Morgan, 901 F.2d at 194. ______ Like Tamburello, the plaintiff in Brennan alleged _______ extortion as a predicate RICO act. In holding that the plaintiff's RICO extortion claim was "preempted" (see supra n.2) ___ _____ by the NLRA, the Eighth Circuit court noted that 18 U.S.C. 1951 (1988) is a generic law prohibiting extortion,4 and reasoned that the court was therefore forced to look to the labor laws to define the alleged illegal conduct. Because the defendant's conduct was illegal, if at all, only by virtue of the NLRA, the  ____________________ 4 18 U.S.C. 1951 provides: (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both. RICO defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. 1951(b)(2). -9- court concluded that the NLRB had exclusive jurisdiction to resolve what was, at its essence, an unfair labor practice claim. See Brennan, 973 F.2d at 647. ___ _______ For reasons similar to those expressed in Brennan, we _______ conclude that the unfair labor practice issues implicated by Tamburello's complaint are not merely collateral to his RICO claims.5 Tamburello alleges that his supervisors placed him on the less desirable work assignments, reduced his chances for overtime pay, made him take a forced vacation or face termination, took away his company vehicle, and made threatening anti-union activities, all to coerce him into giving up his union steward position, and, eventually, to resign his position with Comm-Tract. The problem is that none of this alleged conduct is illegal without reference to the NLRA. It is the NLRA that prohibits employers from creating intolerable working conditions to discourage union activities, see 29 U.S.C. 158(a)(3); Sure- ___ _____ Tan, 467 U.S. 894, and it is the NLRA that prohibits an employer ___ from interfering with an employee's right to join a union and engage in concerted activities for mutual aid and protection. See 29 U.S.C. 158(a)(1), 157. Indeed, one would presume that ___ Congress passed the NLRA, at least in part, precisely because  ____________________ 5 We note also that, in a general sense, claims alleging employer retaliation for protected union activities are not merely a peripheral concern of the NLRA. As indicated above, the conduct alleged in this case would, if true, constitute an unfair labor practice under the NLRA. The authority of the NLRB to remedy unfair labor practices is central to its purpose. NLRB v. ____ State of Illinois Dept. of Employment Security, 988 F.2d 735, 739 ______________________________________________ (7th Cir. 1993). -10- conduct such as that complained of by Tamburello was not theretofore prohibited. We thus agree with the district court's conclusion that "the alleged conduct that led to [Tamburello's] termination of employment is illegal only by reference to union activities." In order to determine whether plaintiff has established a RICO predicate act, a reviewing court would be forced to decide whether some portion of the defendant's conduct violated the federal labor laws. Because plaintiff's claim hinges upon a determination of whether an unfair labor practice has occurred, we conclude that his RICO claims are subject to the primary jurisdiction of the NLRB.6 As a final matter, we will briefly address two additional arguments proffered by the plaintiff. First, Tamburello contends that the NLRA does not apply to his allegations at all because his RICO claims are asserted against the individual defendants, and not the "employer" within the meaning of the NLRA. The NLRA expressly provides, however, that "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly." 29 U.S.C. 152(2). The  ____________________ 6 We note that the question of whether a labor law issue is collateral to issues raised by a claim under another statute is an intensely fact driven inquiry. The focus must be on the particular allegations of the plaintiff's complaint to determine whether any or all of the claims may be resolved without determination of questions of federal labor law. In addition, "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." Motor Coach Employees v. Lockridge, 403 U.S. 274, 292 _____________________ _________ (1971). -11- district court's finding that the individual defendants -- the president, general manager, and manager of Comm-Tract -- acted as the agents of the company is supported by the record, particularly since Tamburello's complaint alleged that the individual defendants controlled Comm-Tract. See American Press, ___ _______________ Inc. v. NLRB, 833 F.3d 621, 625 (6th Cir. 1987) (the test to be ____ ____ applied is "whether, under all the circumstances, the employees could reasonably believe that an employee was reflecting company policy, and speaking and acting for management") (quoting Aircraft Plating Co., 213 N.L.R.B. 664 (1974)). We therefore _____________________ reject Tamburello's argument that the NLRA does not apply to his RICO claims. Second, Tamburello strains to fit his case within the exception to Garmon granted suits alleging a breach of the duty ______ of fair representation under 9(a) of the NLRA. See Breininger ___ __________ v. Sheet Metal Workers Int'l Assoc. Local Union No. 6, 493 U.S. ____________________________________________________ 67, 74 (1989) (reiterating rule that Garmon preemption does not ______ apply to suits alleging a breach of the duty of fair representation) (citing Vaca, 386 U.S. at 181). Tamburello did ____ not sue his union directly, but rather brought his fair representation allegations as part of a "hybrid" action under  301, which provides federal jurisdiction for employees to sue their employer for breach of a collective bargaining agreement, and their union for breach of its duty of fair representation. See 29 U.S.C. 185(a); Vaca, 386 U.S. at 186. The Breininger ___ ____ __________ Court implied that Garmon would not apply to hybrid 301/fair ______ -12- representation claims because of the important interest of having the same entity adjudicate a joint claim against both the employer and the union. See Breininger, 493 U.S. at 80-84. ___ __________ Tamburello argues that the reasoning of Breininger applies to him __________ because he brought both a RICO claim and a fair representation claim. Breininger concerned hybrid actions against the __________ employer for breach of a collective bargaining agreement, and against the union for breach of the duty of fair representation. Tamburello's argument fails because his duty of fair representation claim (Count III) was dismissed by the district court, and is not prosecuted on appeal, and his RICO claims implicate none of the concerns underlying Breininger and Vaca for __________ ____ exempting fair representation claims from the Garmon doctrine. ______ Vaca and Breininger exempted fair representation claims from the ____ __________ reach of Garmon for two related reasons. First, the Court noted ______ that the duty of fair representation has judicially evolved, and that it predated the prohibitions against unfair labor practices. Breininger, 493 U.S. at 74-79 (citing Vaca, 386 U.S. at 181). __________ ____ Second, noting that fair representation claims often involve matters outside the NLRB's unfair labor practice jurisdiction, the Court expressed its doubt that the NLRB brought any greater degree of expertise to such claims than courts. Id. Because __ Tamburello has no viable duty of fair representation claim before the court, and his RICO claims do not implicate the concerns -13- underlying Breininger, his claims remain subject to the primary __________ jurisdiction of the NLRB. II. The State Law Claims II. The State Law Claims ____________________ In Count IV, Tamburello alleges that the conduct of his supervisors violated his rights under the MCRA, Mass. Gen. L. ch. 12 11, which provides a remedy for the interference "by threat, intimidation, or coercion" with an individual's "exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth." Mass. Gen. L. ch. 12, 11I; Bally v. _____ Northeastern University, 403 Mass. 713, 717 (1989). As explained _______________________ above, the alleged conduct of Tamburello's supervisors is arguably subject to 8(a)(3) of the NLRA, which prohibits an employer from discriminating against an employee on the basis of union status, and also to 8(a)(1). As with the RICO claim, therefore, the question is whether any of the three exceptions to Garmon preemption apply. The first and third exceptions do ______ not;7 we address the second exception below. Garmon preemption does not apply when the underlying ______ regulated activity touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling  ____________________ 7 The first exception -- whether Congress has explicitly carved out an exception to the NLRB's exclusive jurisdiction -- is inapplicable to Tamburello's state law claims. With respect to the third exception, we concluded above that the unfair labor practice issues implicated by Tamburello's complaint are not merely collateral to his RICO claims. For the same reasons, they are not merely collateral to his MCRA claims. The third exception therefore does not apply. -14- congressional direction," courts "could not infer that Congress had deprived the States of the power to act." Sears, Roebuck, _______________ 436 U.S. at 195 (quoting Garmon 359 U.S. at 244). In cases ______ where, as here, the underlying conduct is arguably prohibited by __________ the NLRA, the Court has identified two prerequisites to application of the "local interests" exception. First, the state must have a significant interest in protecting the citizen from the challenged conduct. Second, the controversy which could be presented to the state court must be different from that which could have been presented to the NLRB. Sears, Roebuck, 436 U.S. ______________ at 196-97. As the Court explained: The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to ______ avoid. Id. at 197. __ We assume, arguendo, that the state has a significant ________ interest in protecting an employee from the harassment of his supervisors in retaliation for his union activities. We agree with the district court, however, that "Plaintiff's [MCRA] claims raise the same question as would be asked in an unfair labor practice proceeding, namely, whether [his supervisors] placed -15- plaintiff on less desirable work assignments, reduced his chances for overtime pay, and harassed him in retaliation for his union activities."  Because the controversy which would be presented to a state court is identical to that which would be presented to the NLRB, there is a significant risk of state interference with the unfair labor practice of the NLRB. Under Garmon and Sears, Roebuck, ______ _______________ Tamburello's MCRA claims are therefore preempted by the NLRA. CONCLUSION CONCLUSION For the foregoing reasons, the judgment of the district court is affirmed. affirmed ________ -16-