Welch, J.
The defendant has moved for summary judgment on all Counts of the plaintiffs complaint, arguing that the claims are barred by the doctrines of federal pre-emption, collateral estoppel, and failure to state claim. After conducting a hearing on this motion, this Court grants the motion in part and denies the motion in part.
BACKGROUND
This matter arises from an employment dispute previously adjudicated by the National Labor Relations Board (“NLRB”). In her six-Count complaint, plaintiff Judith M. Ray (“plaintiff’) alleges that her former employer, Jordan Marsh Stores Corp. (“Jordan Marsh”), and three of her former supervisors at J ordan Marsh violated the Massachusetts Civil Rights Act, M.G.L.c. 12, §§11H and 1II (Count I), and committed the torts of false imprisonment (Count II), defamation (Count III), negligent supervision of a Jordan Marsh manager named William Briggs (“Briggs”) (Count IV), intentional interference with advantageous relations (Count V), and negligent or intentional infliction of emotional distress (Count VI).
Any fair reading of the complaint establishes that all the Counts asserted by the plaintiff arose out of her employment experiences at Jordan Marsh, where she was working as a salesperson and “as a union organizer” (117 and 8). The complaint alleges that “on the date plaintiff Flay began working as a union organizer and after the date defendant Jordan Marsh terminated her employment on November 26, 1993, plaintiff Ray was harassed because of her union activity.” The complaint alleges that various actions were taken *226 against plaintiff in retaliation for her union organizing activities at Jordan Marsh.
The NLRB held hearings on these matters and found that Jordan Marsh had committed a number of unfair labor practices through its treatment of plaintiff. The NLRB also found that plaintiff had not been unlawfully terminated because of her union activities and that Briggs did not physically push plaintiff as he escorted her off the premises of Jordan Marsh.
In the instant motion, defendant contends that all the Counts brought by plaintiff are pre-empted since they fall within the broad jurisdictional mandate of the NLRB. Defendant also argues that the prior proceedings of the NLRB in this matter bar plaintiffs actions through the doctrine of collateral estoppel.
DISCUSSION
The issue of whether state causes of action are pre-empted by the comprehensive remedial scheme established by Congress through the National Labor Relations Act is a common one. Operating Engineers v. Jones, 460 U.S. 669 (1983); San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). The general rule of Garmon pre-emption is this: if the conduct which the state claim makes its' basis of liability is also arguably covered by the NLRA, the state action is pre-empted. Jones, 406 U.S. at 676. An exception to this rule may be made where the state action is "deeply rooted in local feeling” and where allowing the action to proceed would not interfere with the regulatoiy scheme of the NLRA. Id. See also Tosti v. Ayik, 356 Mass. 721 (1982). With these principles in mind, the court will turn to plaintiffs individual claims.
Count I: Massachusetts Civil Rights Act Violation
The Massachusetts Civil Rights Act, G.L.c. 12 §11H and 111, provides a private remedy for the interference “by threat, intimidation, or coercion” with an individual’s exercise or enjoyment of rights secured by the state or federal constitution. Plaintiff claims that the defendants interfered with her rights of freedom of speech and freedom of association. Specifically, as the complaint makes clear, plaintiff claims defendants interfered with her ability to speak out on issues of labor union policy at Jordan Marsh and her ability to associate with other employees in labor union activities. In response to defendants’ motion for summary judgment, the plaintiff also claims that her ability to make personal phone calls from work to her family was restricted, again due to Jordan Marsh’s alleged anti-union stance.
This claim under the broadly worded Massachusetts Civil Rights Act is precisely the type of action which is subject to Garmon pre-emption. The gist of plaintiffs MCRA action is the same as would be an action under Section 8(a)(3) of the NLRA, which makes it unlawful for an employer “by discrimination in regard to hire or tenure of employment... to encourage or discourage membership in any labor organization.” Since the NLRA vests the NLRB with primary jurisdiction over unfair labor practices, Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995), cert. denied, 116 S. Ct. 1852 (1996), plaintiffs claim falls under the general rule of Garmon pre-emption unless an exception to that rule applies. Since there is no meaningful difference between plaintiffs MCRA action and the Section 8(a)(3) claim brought before the NLRB, the “local feelings” exception is inapplicable. The threats and intimidation plaintiff alleges stemmed from defendants’ alleged anti-union animus, making this claim properly subject to the NLRB’s primary jurisdiction.
Further, federal labor policy would indeed be undermined if employees or employers were able to utilize such broadly worded state civil rights statutes to litigate (or re-litigate) various labor disputes. See Tamburello, 67 F.3rd at 980 (also finding MCRA claim pre-empted by NLRA). The risk of inconsistent findings on this type of claim does pose a substantial threat of interference with the exclusive Federal Regulatory scheme represented by the National Labor Relations Act. Thus, summary judgment must be granted as to Count I.
Count II: False Imprisonment Claim
Summary judgment is denied as to this Count. This state tort claim is precisely the type which is permitted to proceed under the Garmon decision. Torts involving violent tortious activity, defamation or threats are traditionally local matters. Farmer v. United Brotherhood of Carpenters, 430 U.S. 290, 299 (1977); Tosti v. Ayik, 386 Mass. 721 (1982). Further, such actions can be adjudicated at the state level without harm to the federal regulatory scheme. Farmer, 490 U.S. at 300. Regarding defendants’ collateral estoppel argument, the National Labor Relations Board did not specifically address plaintiffs allegations regarding false imprisonment.
Count III: Defamation
This Count is not pre-empted by the National Labor Relations Act, at least to the extent that Count III alleges statements of fact with knowledge of their falsity or reckless disregard of the truth. See Linn v. Plant Guards Local 114, 383 U.S. 53, 61 (1966) (holding state had significant interest in protecting residents from “malicious libels”). This would appear to preclude paragraph 34 of the complaint but permit the plaintiff to go forward on paragraphs 35 and 36 of the complaint.
Count IV: Negligent Supervision
Summary judgment must enter as to this Count, which alleges negligent supervision by Jordan Marsh of defendant William Briggs. The primary allegation of the this Count is that Jordan Marsh was negligent in supervising Briggs because he allegedly “had a history *227 of harassing employees engaging in union organizing efforts.” (¶40.) Thus, this claim is essentially a recasting of a complaint under 8(a)(1) of the NLRA, which makes it an unfair labor practice for an employer to interfere with an employee’s union organizing rights. Thus, the claim is pre-empted. To the extent that the negligent supervision claim relates to Briggs’ alleged assault upon plaintiff, that claim is subject to collateral estoppel given the NLRB’s specific findings on that factual issue. Finally, to the extent that Count IV relates to any activities involving Briggs’ illegal detention of the plaintiff, that is addressed in Count II of the complaint. Thus, summary judgment should enter as to Count IV.
Count V: Intentional Interference with Advantageous Relations
This count, like Count I, essentially alleges unlawful termination due to the plaintiffs union organizing activities and is thus pre-empted. Although Tosti v. Ayik, 386 Mass. 721, 728 (1982), held that an intentional interference claim was not pre-empted, that ruling was based on the fact that the activity complained of — the circulation of defamatory material— might not have been actionable under the NLRA. Here, by contrast, an essential element of plaintiffs claim is based on actions that would give rise to liability under Section 8(a)(3) of the NLRA. As part of her prima facie case of intentional interference, plaintiff must establish that defendants acted with improper motive or means. The principle improper motive alleged in the complaint is the anti-union animus of defendants. Thus, this Count is a recasting of the 8(a)(3) violation that was brought before the Board. There is no strong local interest in adjudicating this claim, and the claim is pre-empted.[1]
Count VI: Infliction of Emotional Distress
Summary judgment is denied as to this Count, which alleges intentional or negligent infliction of emotional distress. Given the alleged method of terminating the plaintiffs employment (including alleged illegal detention and abusive treatment in escorting the plaintiff from the workplace), this is the type of activity that is the proper subject of a state tort law suit. See Farmer v. Carpenters, 430 U.S. 290, 305 (1977). Further, this claim can be adjudicated at the state level without harm to the federal regulatory scheme. Farmer, 490 U.S. at 300.
CONCLUSIONS
For the reasons stated above, the defendants’ motion for summary judgment is ALLOWED as to Counts I, IV, and V. The motion is DENIED as to Count II, III, and VI.

It is also worth noting that although Tosti allowed this type of claim to go forward, that decision was rendered before the United States Supreme Court decided the case of Operating Engineers v. Jones, 460 U.S. 669 (1983). Jones undercuts the Tosti result significantly.